JARED BOBROW (Bar No. 133712)
jared.bobrow@weil.com
BYRON BEEBE (Bar. No. 235179)
byron.beebe@weil.com
EVAN BUDAJ (Bar. No. 271213)
evan.budaj@weil.com
WEIL, GOTSHAL & MANGES LLP
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100

Attorneys for Plaintiff and Counterclaim-Defendant
CES GROUP, LLC

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CES GROUP, LLC,<br><br>         Plaintiff and Counterclaim-Defendant,<br><br>    v.<br><br>ENERGY LABS INC. and DMG CORPORATION,<br><br>         Defendants and Counterclaim-Plaintiffs. | Case No. 13:14-CV-02919-BLF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>Date: February 5, 2015<br>Time: 9:00 a.m.<br>Courtroom: 3<br>Judge: Hon. Beth Labson Freeman |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................... 1

II. ISSUE TO BE DECIDED .................................................................................................. 2

III. STATEMENT OF FACTS................................................................................................ 2

    A.    Numerous Witnesses With Relevant Knowledge Reside In Oregon ...................... 2

    B.    CES Has Senior Management Based In The Northern District ............................. 3

    C.    Defendants Sold Infringing Products In The Northern District In Direct Competition With CES........................................................................................... 3

    D.    Defendants Have Identified Few Contacts With The Southern District ................ 4

II. DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN OF PROVING THAT TRANSFER TO THE SOUTHERN DISTRICT OF CALIFORNIA IS WARRANTED .................................................................................................................. 5

    A.    CES's Choice Of Venue Is Entitled To Significant Weight ................................... 6

    B.    The Convenience Of The Parties Favors The Northern District............................ 8

    C.    Transferring This Case Would Be Inconvenient For Non-Party Witnesses ......... 10

    D.    Evidence Can Be Accessed Easily In The Northern District ............................... 11

    E.    This District Has A Legitimate Interest In Hearing This Case ............................. 12

    F.    The Remaining Factors Do Not Support Transferring This Case ........................ 12

IV. CONCLUSION ............................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allegro Consultants, Inc. v. Wellington Techs., Inc.*,
  2014 WL 4352344 (N.D. Cal. Sept. 2, 2014) ............................................................................. 7

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*,
  2006 WL 2868971 (N.D. Cal. Oct. 6, 2006) ............................................................................. 7

*Barnes & Noble, Inc. v. LSI Corp.*,
  823 F. Supp. 2d 980 (N.D. Cal. 2011) ...................................................................................... 6

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) ................................................................................................... 7

*Cal. Writer's Club v. Sonders*,
  2011 WL 4595020 (N.D. Cal. Oct. 3, 2011) ............................................................................ 6

*Decker Coal v. Commonwealth Edison Co.*,
  805 F.2d 832 (9th Cir. 1986) ..................................................................................................... 5

*Dillon v. Murphy & Hourihane, LLP*,
  2014 WL 5409040 (N.D. Cal. July 3, 2014) ........................................................................ 5, 9

*Florens Container v. Cho Yang Shipping*,
  245 F. Supp. 2d 1086 (N.D. Cal. 2002) .................................................................................. 11

*GLT Technovations, LLC v. Fowness Bros. & Co.*,
  2012 WL 1380338 (N.D. Cal. April 20, 2012) ...................................................................... 10

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ..................................................................................................... 6

*Lax v. Toyota Motor Corp.*,
  2014 WL 3973482 (N.D. Cal. Aug. 14, 2014) .................................................................. 9, 12

*Roth v. Loos & Co.*,
  2009 WL 2525484 (N.D. Cal. Aug 17, 2009) .......................................................................... 8

*Sillah v. Command Int'l Security Services*,
  2014 WL 5144540 (N.D. Cal. Oct. 14, 2014) ................................................................... 6, 11

*Wellens v. Daiichi Sankyo Co.*,
  2013 WL 3242294 (N.D. Cal. June 25, 2013) ......................................................................... 6

I.   INTRODUCTION

When a plaintiff files suit in a proper venue, and material facts arise from the venue, the plaintiff's choice of venue is given substantial deference. By the same token, when a defendant seeks to transfer venue for reasons of convenience, it must make a strong showing of inconvenience, one where the inconvenience of litigating in the plaintiff's chosen forum substantially outweighs the deference given to plaintiff's legitimate choice of venue. If transfer would merely shift the inconvenience to the plaintiff or non-party witnesses, or the defendant merely shows that there is another convenient location, the motion must be denied.

Here, there is no dispute that plaintiff CES Group, LLC ("CES") brought this case in a proper venue. Defendants argue only that litigating in the Southern District of California would be more convenient for them. But CES's choice of venue is entitled to substantial weight in any transfer analysis and should not be set aside. Indeed, as the facts below show, Defendants made the conscious choice to enter into this District to offer and ultimately sell infringing custom air-handling equipment on a large project in San Jose, including fan arrays sold under the Optiline brand. Defendants did so in direct competition with CES and its patented FANWALL® products. In out-bidding CES in this District, Defendants' infringing conduct resulted in the loss of business and the loss of profits within this District. That a contested sale between patented and infringing products occurred in San Jose strongly supports venue in this District.

In light of CES's legitimate choice to litigate in this District, Defendants must make a strong showing that their proposed venue, the Southern District of California, is a substantially more convenient venue. Defendants have utterly failed to do so. Although Defendants make many broad claims about connections to southern California generally – not specifically the Southern District – they back those claims with virtually no evidence. They admit that the vast majority of their relevant witnesses are not in the Southern District, but instead are spread out over Oregon, Missouri, Orange County, Mexico, and Minnesota. They ignore the strong connections this case has to the Northern District, including the presence of relevant party witnesses (such as CES's president and a vice president of CES's parent company that are involved in selling CES's products in competition with Defendants' infringing products) and non-party witnesses involved

1 in CES's and Defendants' efforts to sell air handling equipment in this District for the contested
2 San Jose project. They further ignore that transferring venue to the Southern District would
3 inconvenience the many relevant witnesses that both parties have identified who reside in Oregon,
4 including the named inventor, patent prosecutors, and even some of Defendants' own employees.
5 Indeed, when Defendants' Initial Disclosures, served November 21, 2014, are evaluated, only two
6 witnesses are located in the Southern District, while up to 14 named and unnamed witnesses are
7 located outside of the Southern District.

8 Ultimately, with multiple witnesses located in the Northern District and surrounding areas, transferring this case would merely shift any inconvenience from Defendants to CES and to multiple non-party witnesses. This is not a proper basis for transfer. CES therefore respectfully requests that the Court deny Defendants' motion.

## II.  ISSUE TO BE DECIDED

Whether Defendants have met their burden of showing that the interests of justice and the relevant factors weigh strongly in favor of setting aside CES's legitimate choice of venue.

## III.  STATEMENT OF FACTS

### A.  Numerous Witnesses With Relevant Knowledge Reside In Oregon

More than a decade ago, an employee with CES's Huntair unit, Lawrence Hopkins, developed new technologies in the field of air handling systems. His efforts led to numerous patents, including the seven asserted in this case. Dkt. No. 1 (Complaint) at 2-4. Mr. Hopkins and his employer, Huntair, went on to develop products based on this patented technology, ultimately resulting in the FANWALL® product line.

This inventive activity and product development occurred in Oregon, just outside of Portland. Mr. Hopkins, the named inventor on the patents-in-suit, lives and works in Oregon. Declaration of Byron Beebe (Beebe Decl.) Ex. 1 (CES's Initial Disclosures). John Albert, Vice President of Huntair/Ventrol and General Manger for Data Center Products, is based in Oregon and has knowledge of the development, marketing, and sale of FANWALL® products. *Id.* In addition, Defendants have identified another former Huntair employee, Dave Benson, and the law firm of Chernoff Vilhauer LLP, as having information relevant to the state of the art and the

1  prosecution of the asserted patents.  *Id.* Ex. 2 (Energy Labs' Initial Disclosures); Ex. 3 (DMG's
2  Initial Disclosures).  Both are based in Oregon.  The Northern District of California is much closer
3  to, and more convenient for, these witnesses than the Southern District of California.  *Id.* Ex. 4
4  (Google Maps).

### B. CES Has Senior Management Based In The Northern District

CES, which is headquartered in Minnesota, continues to sell the patented FANWALL® air handling equipment through a number of business units.  Dkt. No. 1 at 2.  CES's president, Mark DeVincent, resides within the Northern District of California.  Beebe Decl. Ex. 1.  Mr. DeVincent has knowledge relevant to this lawsuit, including the operation of CES and its brands, the marketing and sale of the patented FANWALL® technology in competition with Defendants' infringing Optiline products, and damages.  *Id.*  In addition, Kris Holla, a Vice President of CES's parent company, resides in the Northern District.  *Id.* Mr. Holla has knowledge relevant to CES's efforts to sell its patented FANWALL® products against Defendants' infringing Optiline products.  Such knowledge is directly relevant to CES's requests for lost profits damages and injunctive relief.  *Id.* Thus, two senior executives with knowledge relevant to this lawsuit reside within this District.

### C. Defendants Sold Infringing Products In The Northern District In Direct Competition With CES

The Defendants, both California corporations, are in the business of making and selling custom air handling solutions.  Dkt. No. 19 ("Energy Labs Answer") at 3; Dkt. No. 18 ("DMG Answer") at 3.  Both have significant contacts with the Northern District of California.

Recently, both CES and Defendants submitted competing bids to supply air handling equipment for a project in San Jose, California.  Beebe Decl. Ex. 5 (Defendants' San Jose bid); 6 (San Jose bid of CES's sales representative).  CES offered its patented FANWALL® products, and Defendants offered their infringing Optiline products.  *Id.*  Ultimately, Defendants secured the bid.  Based on this infringing conduct, in the form of a head-to-head competition in this District, there are numerous witnesses who live and work in the Northern District of California with direct knowledge related to Defendants' infringing activity and CES's damages.

1    For example, Energy Labs and DMG worked with DMG North to bid on the San Jose project. *Id.* Ex. 5. DMG North is located in Castro Valley, within the Northern District of California. In statements made on DMG's website, DMG North has been referred to as both an affiliate of DMG and as one of DMG's offices. *Id.* Ex. 7 (DMG Website excerpts). The close connection between DMG and DMG North is further shown by the fact that the sales representative assisting with Defendants' bid was DMG's Victor Murphy, who appears to be based in Hawaii. *Id.* Ex. 5, 8 (DMG website profile).[1] Two additional companies based in the Northern District were also working with Energy Labs and DMG on the infringing sale. Control Air North Inc. was the contractor for the San Jose project. Control Air North is located in Hayward, California, within the Northern District. *Id.* Ex. 5. And Webcor Builders reviewed the technical specifications for the infringing air handling unit. Webcor Builders is located in San Francisco, California, also within the Northern District. *Id.*[2]

CES offered its FANWALL® product for the San Jose project. *Id.* Ex. 6. CES worked with, among others, its independent sales representative, non-party Norman S. Wright Mechanical Equipment. *Id.* Ex. 1. The Norman S. Wright supervisor and sales engineer involved with the San Jose project both work in Brisbane, California, which is in the Northern District. *Id.*

### D.    Defendants Have Identified Few Contacts With The Southern District

Energy Labs has little connection to the Southern District of California. Energy Labs admits that it only employs "approximately 4 people" at its San Diego location. Dkt. No. 31-3 (Irani Decl.) ¶ 12. Energy Labs further admits that this location serves only as "a warehouse for receiving raw product for shipment to" Tijuana, Mexico. *Id.* And Energy Labs does not identify by name or location a single sale within the Southern District of California of its infringing Optiline product, much less a sale in that District in head-to-head competition with CES.

In contrast, Energy Labs admits that it has extensive contacts with Tijuana, Mexico,

---

[1] Defendants provide a conclusory declaration stating that DMG North is a separate legal entity from DMG. Although this is contradicted by public statements from DMG on its website and by DMG North's use of DMG employees on the San Jose project, CES has moved to add DMG North to this lawsuit.

[2] Jim Hilliard, an Energy Labs employee, worked on the San Jose project. Beebe Decl. Ex. 5, 9 (Hilliard LinkedIn). Mr. Hilliard is based in Oregon, which is closer to San Jose than San Diego.

1  through a wholly-owned subsidiary. *Id.* ¶ 7.  Energy Labs' core management team, all company
2  documents, and the main company servers are located in Tijuana, and the "vast majority" of its
3  manufacturing and management activities occur in Tijuana.  *Id.* ¶¶ 8-11.  It is beyond dispute that
4  these contacts are not with the Southern District of California.  The remainder of Energy Labs'
5  employees and documents are also located outside the Southern District of California.  Several
6  sales engineers are located in Portland, Oregon.  *Id.* ¶ 15.  And multiple engineers are located in
7  Minneapolis, Minnesota.  *Id.* ¶ 16.

8  The lack of any meaningful connection to the Southern District is highlighted by Energy
9  Labs' Initial Disclosures.  That disclosure names only four employees with relevant knowledge
10 and identifies Energy Labs' San Diego headquarters as the address for each.  Beebe Decl. Ex. 2.
11 But two of these witnesses do not live in San Diego.  Fred Kamps, Energy Labs' Director of
12 Engineering, and James Domholt, the Wisconsin Regional Sales Manager, both appear to reside in
13 Minnesota.  *Id.* Ex. 10 (Kamps LinkedIn), 11 (Domholt LinkedIn); 12 (Domholt 2013 presentation
14 biography).

15 In similar fashion, Defendant DMG identifies no relevant contacts with the Southern
16 District of California.  DMG's main office is located in Orange County, which is in the Central
17 District of California.  Dkt. No. 31-2 (Sweet Decl.) ¶¶ 4-5.  DMG also keeps a substantial portion
18 of its documents on servers located in Orange County.  *Id.* ¶ 7.  DMG admits to having additional
19 employees located in Hawaii and Santa Barbara.  *Id.* ¶ 6.  One of these employees, Victor Murphy,
20 who participated in the San Jose project, is identified by DMG's website as being located in
21 Hawaii.  Beebe Decl. Ex. 8.  None of these contacts is in the Southern District of California.  In
22 fact, DMG did not identify a single employee based in the Southern District of California in its
23 initial disclosures. *Id.* Ex. 3.

24 **II.  DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN OF PROVING THAT
25 TRANSFER TO THE SOUTHERN DISTRICT OF CALIFORNIA IS WARRANTED**

26 Defendants bear the burden of proving that venue should be transferred.  *Dillon v. Murphy*
27 *& Hourihane, LLP*, 2014 WL 5409040 at *12 (N.D. Cal. July 3, 2014).  To meet this burden,
28 Defendants need to "make a strong showing of inconvenience to warrant upsetting the plaintiff's

1  choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 832, 843 (9th Cir.
2  1986). "As a general rule, the plaintiff's choice of forum is given significant weight and will not
3  be disturbed unless other factors weigh substantially in favor of transfer." *Wellens v. Daiichi*
4  *Sankyo Co.*, 2013 WL 3242294 at *2 (N.D. Cal. June 25, 2013). Thus, as this Court has
5  recognized, simply showing that the transferee forum is "an *additional* appropriate forum" "is not
6  enough for the Court to override the Plaintiff's choice . . . ." *Id.* at *14 (emphasis in original). In
7  considering a transfer request, and consistent with the Ninth Circuit's identification of relevant
8  factors in *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000), this District
9  regularly identifies and considers the following factors: "(1) plaintiff's choice of forum, (2)
10 convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5)
11 familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims,
12 (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in
13 each forum." *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011).
14 None of these factors weighs in favor of transferring this case.

15       **A.    CES's Choice Of Venue Is Entitled To Significant Weight**

16       "Generally, the plaintiff's choice of forum is treated with great deference, and only
17 significant inconvenience or unfairness will justify transfer." *Sillah v. Command Int'l Security*
18 *Services*, 2014 WL 5144540 at *4 (N.D. Cal. Oct. 13, 2014). Thus, Defendants must show
19 "significant unfairness or inconvenience to justify transferring venue." *Id.* "In order for this
20 factor to weigh in favor of transfer, the forum must lack any significant contact with the activities
21 alleged in the complaint." *Cal. Writer's Club v. Sonders*, 2011 WL 4595020 at *14 (N.D. Cal.
22 Oct. 3, 2011).

23       Here, events giving rise to CES's claims have significant connections to this District and
24 CES's choice of venue is therefore entitled to substantial weight. Defendants entered into the
25 Northern District of California, where they competed in a head-to-head bidding process against
26 CES for the San Jose project, and ultimately sold and installed an infringing Optiline product here.
27 Beebe Decl. Ex. 5. Defendants worked with local contractors from, and sold a product that would
28 be delivered to and be operated in, the Northern District. *Id.* They competed against CES and its

1  northern California contractors and sales representatives for business unique to the Northern
2  District. And the successful sale of a product in this District both caused CES to lose business in
3  this District and introduced a competing and infringing product into this District. Acts giving rise
4  to CES's claims thus occurred in this District. *See Beverly Hills Fan Co. v. Royal Sovereign*
5  *Corp.*, 21 F.3d 1558, 1570 (Fed. Cir. 1994) (noting that "when an infringement occurs by a sale
6  of an infringing product, the right to exclude is violated at the situs where the sale occurs").

7  Defendants attempt to retreat from the consequences of their conduct in this District by
8  claiming that "this infringement case will center on design and manufacturing" of their products[3]
9  and that the sales contacts with this District are the result of "a generalized activity that occurs in
10 multiple districts in the country" with "nothing specific or different happening in the Northern
11 District." Dkt. No. 31 at 6-8. These arguments are without support.

12 First, Defendants ignore the fact that they competed head-to-head against CES for the San
13 Jose project. Defendants offered their infringing Optiline product in competition with CES's
14 FANWALL® product. In doing so, Defendants caused CES to lose the profit associated with that
15 sale. Such purposeful conduct creates a strong connection to this District. Defendants do not
16 identify any head-to-head sales between the infringing Optiline products and CES's patented
17 FANWALL® products in the Southern District of California.

18 Second, Defendants' motion fails to identify with particularity a single customer located in
19 the Southern District of California that purchased a custom air handling unit accused of
20 infringement. Instead, they rely on generalized statements that "many more accused products are,
21 and have been, sold in southern California than in northern California." Irani Decl. ¶ 18. This
22 alone is sufficient to discount their claims. *Allegro Consultants, Inc. v. Wellington Techs., Inc.*,
23 2014 WL 4352344 at *9 (N.D. Cal. Sept. 2, 2014) (motion addressing transfer factors "only
24 generally and in conclusory fashion without citation to record evidence" was not sufficient to meet

25

---

26 [3] Defendants cite to cases which purportedly state that a case should proceed where its "center of
27 gravity" exists. Dkt. No. 31 at 4. Although courts frequently use this phrase, it is only a colloquialism that reflects the overall analysis but has not been adopted by the Ninth Circuit.
28 *Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc.*, 2006 WL 2868971 at *3 (N.D. Cal. Oct. 6, 2006) ("Some courts in this district, and others, have applied the "center of gravity" test. The Ninth Circuit, however, has not.") (citations omitted).

1  the requisite "strong showing" necessary to warrant disregard of plaintiff's choice of forum). Nor
2  would it be proper for Defendants to introduce new evidence to cure this flaw in reply. "Parties
3  are required to raise all of their arguments in their opening brief to prevent 'sandbagging' of the
4  nonmoving party and to provide opposing counsel the chance to respond." *Roth v. Loos & Co.*,
5  2009 WL 2525484 at *3 (N.D. Cal. Aug 17, 2009).

6  Third, Defendants' reference to manufacturing of the infringing Optiline products does not
7  support transfer, because Defendants make their products outside the Southern District in Tijuana,
8  Mexico. Dkt. No. 31 at 2-3 (noting that Energy Labs "manufacturing and management activity
9  occurs" in Tijuana). Relatedly, DMG, to the extent it designs or manufactures components at all,
10 does so in Orange, part of the Central District of California. Sweet Decl. ¶ 4 ("DMG has its
11 principal place of business in Orange County, in Southern California."). In fact, DMG has not
12 identified a single connection to the Southern District that would support transferring this case.
13 CES's choice of forum is thus entitled to substantial weight in the transfer analysis.

14 **B.     The Convenience Of The Parties Favors The Northern District**

15 The convenience of the parties will be diminished if this case is transferred to the Southern
16 District of California. CES has two executives residing in the Northern District: Mark
17 DeVincent, its President, and Kris Holla, a Vice President of CES's parent company. Both have
18 knowledge relevant to the marketing and sale of CES's patented FANWALL® products in
19 competition with Defendants' infringing products, and the damages arising from Defendants'
20 infringement. Beebe Decl. Ex. 1. Other CES witnesses are located near, or can more easily reach,
21 the Northern District, such as John Albert, who is based in Oregon.

22 Defendants allege that it would be much more convenient for them to litigate in the
23 Southern District of California. But their Initial Disclosures, served after their motion was filed,
24 prove otherwise.

25 Energy Labs identified only four witnesses in its Initial Disclosures with a Southern
26 District of California work address. *Id.* Ex. 2. But two of those four witnesses – Director of
27 Engineering Fred Kamps and Regional Sales Manager James Domholt – appear to be based in
28 Minnesota, which is roughly the same distance from the Northern and Southern Districts. *Id.* Ex.

10, 11. Energy Labs' sales engineers are based in Portland, Oregon, closer to the Northern District than the Southern District. Although not mentioned in Defendants' motion, one of those sales engineers, Jim Hilliard, participated in the San Jose project and has relevant information for this case. Beebe Decl. Ex. 5, 9. There is no question that the Northern District is more convenient for Oregon-based witnesses than the Southern District.

Similarly, DMG is based in Orange, in the Central District, meaning its corporate witnesses would be required to travel for trial in either venue.[4] Although DMG identifies no relevant witnesses in its motion, sales engineer Victor Murphy, apparently based in Hawaii, took part in the San Jose project. Beebe Decl. Ex. 5, 8. There would therefore be no overall increase in convenience to the DMG witnesses if this case were transferred.

Ultimately, however, Defendants' arguments about witness convenience are misplaced. Given the multiple locations of corporate witnesses and the fact that travel will be required for trial in either location, Defendants ultimately argue no more than that "the Northern District is simply not more convenient." Dkt. No. 31 at 9. This is not the test. Defendants must instead make a strong showing that the Southern District is the substantially more convenient forum, not simply that it is another convenient location. *Dillon*, 2014 WL 5409040 at \*14 (denying transfer when the Defendant "has simply shown that Illinois is an *additional* appropriate forum" because such a showing "is not enough for the Court to override the Plaintiff's choice of California as a forum for the litigation"). Moreover, the limited travel about which Defendants complain is not a significant factor in the transfer analysis. It is presumed that all parties will bring their own witnesses to trial. *Lax v. Toyota Motor Corp.*, 2014 WL 3973482 at \*4 (N.D. Cal. Aug. 14, 2014) (noting that "the convenience of a litigant's employee witnesses are entitled to little weight because litigants are able to compel their employees to testify at trial, regardless of forum") (citation omitted). Thus, this factor weighs against transfer.

---

[4] There is no substantial difference in travel time between the two venues. It is roughly a 90 minute drive to the Southern District from Orange, and a 70 minute flight to San Jose from Orange County. The flight costs approximately $250. Dkt. No. 31-1 (Kanach Decl) Exs. A, C.

**C.     Transferring This Case Would Be Inconvenient For Non-Party Witnesses**

In contrast to party witnesses, there are multiple known non-party witnesses that will be inconvenienced if this case is transferred to the Southern District of California. The needs of non-party witnesses are "often the most important factor in resolving a motion to transfer" because "[p]rimary consideration is given to third party, as opposed to employee witnesses." *GLT Technovations, LLC v. Fownes Bros. & Co.*, 2012 WL 1380338 at *4 (N.D. Cal. April 20, 2012).

Here, both the number of non-party witnesses and the nature of their testimony strongly weigh against transfer in this case. To begin, a significant number of non-party witnesses are located in or around the Northern District and thus would be inconvenienced if this case were transferred. In its Initial Disclosures, CES identified multiple non-party witnesses in the Northern District and explained the relevance of their knowledge. For example, Steve and Rich Leao of Norman S. Wright Mechanical Equipment Company were both involved in bidding on the San Jose project for CES. They will have testimony related to the project specifications and the nature of the products necessary to satisfy those specifications, along with information related to damages for the loss of the project. Both are based in Brisbane, California, in the Northern District. Beebe Decl. Ex. 1. Likewise, DMG North, which was actively involved for Defendants in the San Jose project, is based in Castro Valley, in the Northern District, as is its Manager, Joe Pipitone. *Id.* To the extent Defendants contend that DMG North is, in fact, separate from DMG, its presence and participation in the San Jose project, in conjunction with DMG employees, confirms that it has significant and relevant information related to this case. Finally, there are numerous non-party witnesses based in Oregon, who would face increased inconvenience if this matter were transferred. These include the inventor of the asserted patents, Lawrence Hopkins, along with Dave Benson and the Chernoff Vilhauer law firm. Although not discussed in their motion, Defendants named all three of these Oregon witnesses in their Initial Disclosures. *Id.* Ex. 2, 3.

Defendants' motion failed to name a single specific non-party witness with information relevant to this case who lives in the Southern District. This failure is compelling, particularly in light of CES's showing that multiple non-party witnesses reside in and around the Northern

1 District.  *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1093 (N.D. Cal. 2002) ("The party seeking a transfer cannot rely on vague generalizations as to the convenience factors.  The moving party is obligated to identify the key witnesses to be called and to present a generalized statement of what their testimony would include.").  Defendants also have not identified any witnesses that would be unwilling or unable to travel to the Northern District if necessary.  *See Sillah*, 2014 WL 5144540 at *5 (denying transfer in part because "Defendants fail to identify any witnesses, their proposed testimony, or any reason why witnesses would be unwilling to appear in this district").  This factor therefore weighs heavily against a transfer.

**D.     Evidence Can Be Accessed Easily In The Northern District**

With respect to the San Jose project, the infringing product is in the Northern District, along with documents held by DMG North and non-parties such as Norman S. Wright Mechanical.

In contrast, there are no documents in the Southern District of California.  Energy Labs has admitted that all of its documents are in Tijuana, Mexico.  Irani Decl. ¶ 9 ("All company documents, including but not limited to engineering, production, research and development, operations, purchasing, service and sales are available in Tijuana.").  Thus, regardless of venue, these documents will have to be packed up and shipped – most likely electronically given the nature of modern practice – to the United States.  Likewise, all documents held by DMG will have to be sent from the Central District or Hawaii.  Sweet Decl. ¶ 7 ("All data from the Orange County and Santa Barbara offices is held on a server in the Orange County office.  Data in Hawaii is held in Hawaii").

Courts considering this issue regularly find there is little practical weight to document production issues given today's advances in technology and the prevalence both of electronic documents and global law firms—indeed, Defendants themselves have counsel both in San Diego and San Francisco and thus will have to send documents to both locations.  *See Sillah,* WL 5144540 at *5. (noting that "technological advances in document storage and retrieval mitigate the burdens of transporting documents"); *Lax*, 2014 WL 3973482 at *5 ("Nevertheless, in this type of case where electronic discovery is the norm (both for electronic information and digitized paper

1  documents), ease of access is neutral given the portability of the information"). Ultimately, any
2  inconvenience here is of the marginal type that is regularly found insufficient to support a transfer.

3  **E.  This District Has A Legitimate Interest In Hearing This Case**

4  The evidence of record clearly shows that the Northern District has a strong interest in adjudicating this dispute. Substantial infringing conduct occurred in this District, including competitive bidding for the San Jose project between CES and Defendants. Defendants' sale of the infringing Optiline product ultimately hurt businesses in this District, including Norman S. Wright of Brisbane. Defendants' motion fails to identify any meaningful conduct or activity in the Southern District of California, where DMG has no employees and where Energy Labs employs only four people in a warehouse operation.

11  **F.  The Remaining Factors Do Not Support Transferring This Case**

12  Finally, the remaining factors are either neutral or uncontested. Defendants themselves admit that neither forum will have any greater familiarity with the applicable law. Dkt. No. 31 at 7. And Defendants make no argument that the availability of compulsory process or the feasibility of consolidation weigh in favor of transfer or otherwise supports the strong showing Defendants are required to make. Finally, Defendants make no argument that the case will proceed any faster in the Southern District. CES filed this suit in June. A CMC is scheduled for December 18. A transfer would only serve to delay this matter unnecessarily. Thus, none of the remaining factors weighs in favor of transfer.

20  **IV.  CONCLUSION**

21  For the reasons stated above, Defendants have failed to make any showing, let alone a strong showing, that the relevant factors weigh substantially in favor of a transfer or warrant setting aside CES's legitimate choice of venue for this litigation. The Court should therefore deny Defendants' motion to transfer.

|   |   |
|---|---|
| | Respectfully submitted, |
| Dated: December 1, 2014 | WEIL, GOTSHAL & MANGES LLP |
| | By: _____*/s/ Jared Bobrow*_____ |
| | Jared Bobrow |
| | Attorneys for Plaintiff and |
| | Counterclaim-Defendant |
| | CES Group, LLC. |