**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| NORTEK AIR SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Energy Lab CORPORATION, et al.,<br><br>Defendants. | Case No. 14-cv-02919-BLF<br><br>**ORDER REGARDING MOTIONS** *IN LIMINE*<br><br>[Re: ECF 226, 227, 228, 229, 230, 231, 232, 233, 235] |

Plaintiff Nortek Air Solutions, LLC ("Nortek") brings this patent infringement lawsuit against Defendants Energy Labs Inc., DMG Corporation, and DMG North, Inc. (collectively, "Energy Lab") alleging infringement of seven of Nortek's patents directed at air handling systems that meet the heating, ventilation, and air conditioning ("HVAC") requirements of commercial, industrial, and institutional buildings: U.S. Patent Nos. 7,922,442 (the "'442 patent"); 8,414,251 (the "'251 patent"); 8,398,365 (the "'365 patent"); 8,562,283 (the "'283 patent"); 8,694,175 (the "'175 patent"); 8,727,700 (the "'700 patent"); and 8,734,086 (the "'086 patent") (collectively, "Asserted Patents"). Compl., ECF 1. This Order addresses the parties' motions *in limine*. For the reasons explained below and on the record at the July 6, 2016 pretrial conference, the motions are decided as follows:

Nortek's Motion *in Limine* No. 1: DENIED.

Nortek's Motion *in Limine* No. 2: DENIED.

Nortek's Motion *in Limine* No. 3: DENIED.

Nortek's Motion *in Limine* No. 4: DENIED.

Nortek's Motion *in Limine* No. 5: GRANTED IN PART AND DEFERRED IN PART.

Energy Labs' Motion *in Limine* No. 1: DENIED IN PART AND DEFERRED IN PART.

Energy Labs' Motion *in Limine* No. 2: GRANTED.

Energy Labs' Motion *in Limine* No. 3: DENIED.

Energy Labs' Motion *in Limine* No. 4: DENIED.

## I. NORTEK'S MOTIONS *IN LIMINE*

### A. Nortek's Motion *in Limine* No. 1 to Exclude Evidence or Argument Related to Alleged Prior Art Systems. DENIED.

Nortek moves to exclude Energy Labs' (1) invalidity theories based on prior art systems or products from CleanPak; (2) anticipation and single-reference obviousness theories based on Pace and Energy Labs; and (3) single-reference obviousness theories. MIL No. 1 at 1, ECF 230. According to Nortek, Energy Labs did not properly disclose a CleanPak System as required by Fed. R. Civ. P. 26(a)(2)(B)(i). *Id*. at 2-3. Nortek also claims Energy Labs has not identified a single Pace or a single Energy Labs system for its anticipation and single-reference obviousness theories. *Id*. at 3-4. Finally, Nortek argues that Energy Labs did not properly disclose its single-reference obviousness theories as required by Fed. R. Civ. P. 26. *Id*. at 4-5.

Energy Labs responds that it sufficiently disclosed its invalidity positions in its invalidity contentions and expert's invalidity reports. Opp. No. 1 at 1, ECF 241. Energy Labs also argues that its disclosures are sufficient because after Nortek received its invalidity contentions on December 18, 2015, and expert reports on January 15, 2016, Nortek stipulated on February 29, 2016 that its complaints regarding the sufficiency of the invalidity contentions had been resolved. *Id*.

The Court agrees with Energy Labs and finds that Nortek's stipulation as to the adequacy of Energy Labs' invalidity contentions resolved this issue.[1] To be clear, there can be times where a party's invalidity contentions are sufficient under the Patent Local Rules, but that party's expert's report does not contain adequate Rule 26(a) disclosure. However, in this motion, what Nortek disguises as a Rule 26(a) objection is really an objection to the adequacy of the invalidity

---

[1] At the pretrial hearing, Nortek stated that, based on Energy Labs' opposition, its motion no longer pertained to the Energy Labs system. Tr. 36:130-13, ECF 266.

2

contentions. If Nortek believed the invalidity contentions were insufficient, it could have brought an appropriate motion to compel. It did not, and instead, agreed the invalidity contentions were sufficient. Stipulation, ECF 165. As a result, the Court will not re-visit this issue and DENIES Nortek's motion in limine no. 1.

### B. Nortek's Motion *in Limine* No. 2 to Exclude Evidence or Argument Related to Obviousness. DENIED.

Nortek seeks to exclude all of Energy Labs' obviousness theories because they were not properly disclosed as required by Fed. R. Civ. P. 26. MIL No. 2 at 1, ECF 231. Nortek argues that Energy Labs concealed the combinations of references they actually intend to use at trial by reciting every possible combination of prior art in its invalidity reports. *Id*.

In response, Energy Labs argues that its experts disclosed discrete obviousness combinations and provided detail for each specific combination. Opp. No. 2. at 1, ECF 242. Energy Labs also argues that this motion is an untimely attempt to preclude its obviousness defenses. *Id*. at 1-2. According to Energy Lab, Nortek previously moved to compel more specific invalidity contentions but dropped that motion after it received Energy Labs' supplemental invalidity report. *Id*. Energy Labs argues that Nortek, until this motion, never raised any issues with Energy Labs' obviousness theories and Nortek's expert was able to provide lengthy rebuttal responding to each one of the obviousness combinations. *Id*.

The Court agrees with Energy Labs and finds that Nortek's motion is an untimely attempt to seek a second bite at attacking Energy Labs' invalidity theories and even if it was not, Nortek was not prejudiced by Energy Labs' disclosures. If Nortek did not have adequate clarity as to the obviousness combinations asserted by Energy Lab, Nortek could have brought a motion to compel. *See, e.g. Verinata Health, Inc. v. Sequenom, Inc.*, Case No. 12-cv-00-865-SI, 2014 WL 4100638, at *6 (N.D. Cal. Aug. 20, 2014) ("[I]f the claim charts caused [plaintiff] to suffer any confusion as to what particular obviousness combinations were being asserted, then the proper recourse would have been for [plaintiff] to compel [defendant] to amend its invalidity contentions, not for [plaintiff] to wait until expert discovery and then move to strike the expert report.") As explained, *supra* I.A, Nortek did the opposite and stipulated that its complaints regarding the

sufficiency of the invalidity contentions had been resolved. Moreover, Nortek did not suffer any prejudice as a result of Energy Labs' obviousness disclosures. Nortek's expert was able to offer a rebuttal to each obviousness combination that Energy Labs disclosed. *See Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1374-75 (Fed. Cir. 2012) (the purpose of Rule 26 is "to convey the substance of the expert's opinion … so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary"). Accordingly, the Court DENIES Nortek's motion *in limine* no. 2.

### C. Nortek's Motion *in Limine* No. 3 to Limit Energy Labs' Invalidity Grounds. DENIED.

Nortek argues that Energy Labs should be limited to four invalidity grounds per asserted claim and should be required to disclose those grounds with specificity in the interests of justice and to promote the fair and efficient presentation of the case to the jury. MIL No. 3 at 1, ECF 232. Energy Labs responds that its assertion of six anticipation references and six obviousness combinations for all six asserted patents is not unreasonable. Opp. No. 3 at 1, ECF 240-13.

At the hearing, the Court informed the parties that it had difficulty understanding the nature of Energy Labs' invalidity grounds. In explaining its position, it became apparent that Energy Labs was at best using a peculiar system of counting invalidity grounds. For example, in its opposition, Energy Labs counted the CLEANPAK Small Cabinet Fans ("CLEANPAK SCF") as a single anticipatory reference. At the hearing, Energy Labs explained that it would prove the CLEANPAK SCF was anticipatory by using two brochures. Tr. 49:4-7, ECF 266. Energy Labs continued, however, to also explain that it would use each brochure standing alone as an anticipatory reference. Tr. 50:18-19, ECF 266. As a result, what under any reasonable system of counting invalidity grounds would amount to three invalidity grounds, Energy Labs counted as only one invalidity ground. Because Energy Labs' invalidity grounds were unclear, the Court ordered Energy Labs to provide a list of invalidity grounds claim by claim by no later than July 8, 2016. The Court also gave Nortek permission to file a two page supplemental brief if it had any issues with the list of invalidity grounds that Energy Labs filed. Tr. 55:13-18, ECF 266.

After the hearing, Energy Labs did provide a list of invalidity grounds on a claim by claim

basis. ECF 268. Energy Labs is asserting five invalidity grounds per asserted claim for a total of 40 invalidity grounds. To date, Nortek has not filed any supplemental briefing regarding Energy Labs' list. As support for asserting 40 invalidity grounds, Energy Labs cites *Rambus, Inc. v. Hynix Semiconductor Inc.*, 2008 U.S. Dist. LEXIS 76217, at *27-28 (N.D. Cal. Aug. 27, 2008), where in an order on summary judgment, the court commented that approximately five invalidity combinations per claim seemed reasonable. The Court will not make any further cuts on the number of grounds Energy Labs is asserting but notes that each side has 18 hours to present its case and that in *Rambus*, after the ruling cited by Energy Labs, the court ordered the accused infringers to identify no more than two obviousness combinations per claim prior to trial. Tr. 42:20-47:11, ECF 3178, *Rambus*, Case No. 05-cv-00334-RMW (N.D. Cal. Jan. 6, 2009). Finally, the parties should not take this as an invitation to file additional briefing seeking to limit the number of invalidity grounds as the Court will adhere strictly to the trial time limits but allow the parties to use their time in the manner they see fit. *See id*. at 43:3-44:3 (counsel for accused infringer in *Rambus*, arguing against a court imposed limitation on the number of obviousness grounds and instead, arguing he should be able to spend the allocated trial time as he wants). Accordingly, the Court DENIES Nortek's motion *in limine* no. 3.

### D. Nortek's Motion *in Limine* No. 4 to Exclude Evidence and Argument Regarding Nortek's Efforts to Acquire Energy Labs. DENIED.

Nortek seeks to exclude all evidence and argument regarding its efforts to acquire Energy Labs under Fed. R. Evid. 401, 402, and 403. MIL No. 4 at 1, ECF 233-4. Nortek argues that its motives in bringing this lawsuit are not relevant and that this evidence is prejudicial and will result in a waste of time. *Id*. Energy Labs responds that Nortek's efforts to acquire it are relevant to damages and secondary considerations of nonobviousness. Opp. No. 3 at 1, ECF 240-17.

The Court agrees with Energy Labs that Nortek's efforts to acquire it have marginal relevance to the issue of damages and secondary considerations of nonobviousness. For example, Nortek's acquisition motivations may be relevant to issues of price erosion and why Nortek had to discount bids. This evidence may also be relevant to rebut any suggestion that Energy Labs copied Nortek's products. Accordingly, Nortek's motion *in limine* no. 4 is DENIED. However,

1  the Court will consider giving the jury a limiting instruction as to what issues this evidence may be
2  considered for.  If Nortek wishes to have the Court give the jury a limiting instruction, it shall
3  draft an instruction, provide a copy to Energy Lab, and be prepared to discuss it at the charging
4  conference on July 22, 2016.

   **E. Nortek's Motion *in Limine* No. 5 to Exclude Certain Witness Testimony. GRANTED IN PART AND DEFERRED IN PART.**

 Nortek moves to preclude Energy Labs from (1) calling live or by deposition Jeff Forman, and Robert Brune because those witnesses were not timely disclosed under Fed. R. Civ. P. 26 and (2) calling live or by deposition Susan Snyder because her 30(b)(6) testimony on Nortek's retention policies and efforts to locate documents during discovery is not relevant and highly prejudicial.  MIL No. 5 at 1, ECF 235.  Energy Labs argues that Messrs. Forman and Brune were disclosed during discovery and that Nortek knew of their relevance to this case prior to Energy Labs' disclosures.  Opp. No. 5 at 1, ECF 240-23.  As to Ms. Snyder, Energy Labs argues that her testimony is relevant to damages. *Id*. at 2.

 The Court finds Messrs. Forman and Brune were not disclosed in compliance with Fed. R. Civ. P. 26.  Energy Labs disclosed Messrs. Forman and Brune on the last day of discovery.  Exh. 2 to MIL No. 5, ECF 235-4.  By waiting until the last minute to disclose these individuals, Energy Labs did not give Nortek a fair opportunity to depose these witnesses or subpoena them for documents.  As a result, this disclosure on the eve of the discovery cut-off was not substantially justified or harmless under Rule 37(c)(1) and the Court GRANTS Nortek's motion *in limine* with respect to excluding Messrs. Forman and Brune.

 As to Ms. Snyder, the Court finds that her testimony may be potentially relevant to Energy Labs' damages case and the context surrounding Nortek's price erosion evidence.  However, the Court cannot make that determination without a more developed record.  Accordingly, the Court DEFERS ruling on excluding Ms. Snyder, but Energy Labs must give Nortek advance notice if it intends to call Ms. Snyder so that any objections to her testimony are filed with the Court no later than by 5 p.m. the court day before she is called as a witness.

## II. ENERGY LABS' MOTIONS *IN LIMINE*

### A. Energy Labs' Motion *in Limine* No. 1 to Exclude the Expert Testimony of Dr. Stephen D. Prowse and Alleged Evidence Regarding Price Erosion.  DENIED IN PART AND DEFERRED IN PART.

Energy Labs moves, pursuant to Fed. R. Civ. P. 26 and 37(c)(1) and Fed. R. Evid 403 and 702, to prevent Nortek from presenting the expert testimony of Dr. Stephen D. Prowse and certain evidence regarding price erosion.  MIL No. 1 at 1, ECF 224-5.  According to Energy Labs, Dr. Prowse did not make any attempt to determine whether the alleged price erosion (price discounts offered by Nortek on its sales) related to the alleged infringement.  *Id*.  By not addressing causation, Energy Labs argues that Dr. Prowse's price erosion theory should be excluded.  *Id*.  Energy Labs also argues that Dr. Prowse's price erosion opinions are improper because he fails to consider whether Defendant DMG had any involvement with the 63 Nortek discounted bids.  *Id*. at 4.  Energy Labs also argues that Nortek's price erosion spreadsheets are inadmissible hearsay and present improper expert opinions.  *Id*. at 5.

Nortek responds that, contrary to Energy Labs' argument, Dr. Prowse addressed causation, by appropriately relying on witness testimony and documentary evidence.  Opp. No. 1 at 1-4, ECF 246.  Nortek argues that Dr. Prowse's opinions were reached through the use of the *Panduit* factors, and that Energy Labs' real dispute is with the weight of the evidence.  *Id*.  Nortek also argues that Dr. Prowse did not need to discretely analyze DMG's role in discounting because DMG is jointly and severally liable for the infringement.  *Id*. at 3 n. 3. As to the price erosion spreadsheets, Nortek argues that that they are business records and summaries of voluminous financial data.  *Id*. at 5.  Moreover, Nortek claims that even if the spreadsheets are not admissible, Dr. Prowse, as an expert, may base his opinions on them.  *Id*.

The Court agrees with Nortek and finds that Energy Labs' motion raises issues that are better solved through cross-examination as opposed to outright exclusion.  Nortek has put forth a sufficient showing of circumstantial evidence that it offered price discounts because of alleged infringement by Energy Labs.  While Energy Labs may find Dr. Prowse's opinions lack strong evidentiary support, Energy Labs can bring out those deficiencies on cross-examination. As a result, the Court DENIES this aspect of Energy Labs' motion.

As to whether Dr. Prowse did not properly analyze DMG's role with respect to price erosion, the Court DEFERS ruling. Both parties submitted proposed verdict forms that did not ask the jury to determine liability on a project-by-project basis. ECF 252. Although at the hearing, Energy Labs contended it did not intend to waive this, its submitted verdict form did not capture that. In any event, this dispute appears to be one that can best be solved by the parties. Accordingly, the Court directs the parties to resolve this dispute and DEFERS ruling on this aspect of Energy Labs' motion.

As to the spreadsheets, they are admissible as summaries of voluminous financial data under Fed. R. Evid. 1006. Accordingly, the Court DENIES this part of Energy Labs' motion.

### B. Energy Labs' Motion *in Limine* No. 2 to Exclude the Expert Testimony of Dr. Stephen Prowse Regarding Royalty Damages and Testimony and Evidence of Accused Sales Before Issuance of the Patents-In-Suit. GRANTED.

Energy Labs moves, pursuant to Fed. R. Civ. P. 26 and 37(c)(1) and Fed. R. Evid. 403 and 702, to exclude Nortek from presenting expert testimony of Dr. Prowse regarding reasonable royalty damages for three reasons: first, Dr. Prowse's royalty analysis fails to apportion the value of the allegedly patented features from the unpatented features in the accused products; second, Dr. Prowse's analysis improperly attributes the sales made by supplier ELI to Defendants DMG Corp. and DMG North, Inc.; and third, Dr. Prowse offers only a single royalty based on a finding that all of the accused features such that Nortek argues he should not be allowed to offer an opinion on damages for anything other than a finding that all four accused features infringe. MIL No. 2 at 1, ECF 224-23.

In response, Nortek argues that Dr. Prowse properly relied upon the value of the air handling system as a whole rather than a smaller component because the asserted claims are directed to the entire air handling unit rather than any individual features. Opp. No. 2 at 1-2, ECF 253-4. Nortek also argues that the air handling unit is the smallest saleable unit and thus an appropriate royalty base. *Id*. at 2-3. As to damages owed by DMG, Nortek argues that DMG is jointly and severally liable for patent infringement. *Id*. at 4-5. Finally, as to apportioning among the accused features, Nortek argues that Dr. Prowse's opinion is that the royalty rate would be the same whether one or more of the patents-in-suit are infringed. *Id*. at 3. As a result, Nortek claims

Dr. Prowse was not required to apportion among the patents-in-suit to establish a reliable royalty rate. *Id*. at 4.

The Court finds that Dr. Prowse's opinions on a reasonable royalty rate must be excluded because he did not engage in any apportionment or attempt to separate the value of the patented features from the unpatented features. First, the Court notes that there is a disconnect between the explanation given by Dr. Prowse as to why he did not apportion the revenue base and Nortek's briefing as to why there was no need to apportion the revenue base. In Dr. Prowse's expert report, he states that there is no need to apportion the revenue base because there is "substantial evidence that the patented features do in fact drive demand and motivate buyers to purchase air-handling units." Exh. 1 to MIL No. 2 at ¶ 135, ECF 224-24. However, Dr. Prowse's basis for concluding that the patented features drive demand is insufficient. He relies on the fact that Nortek chooses to highlight the patented features in its marketing to conclude that the patented features drive consumer demand. *See, e.g. id.* at ¶ 118. However, the fact that a company chooses to advertise its products in a certain way says nothing about why a customer chooses to purchase a particular product. He also relies upon the fact that the accused features are the "heart" of the system or essential to the use of the system and therefore, must have driven customer demand. This theory of customer demand runs afoul of the Federal Circuit's ruling in *LaserDynamics v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012):

> It is not enough to merely show that the disc discrimination method is viewed as valuable, important, or even essential to the use of the laptop computer. Nor is it enough to show that a laptop computer without an ODD practicing the disc discrimination method would be commercially unviable. Were this sufficient, a plethora of features of a laptop computer could be deemed to drive demand for the entire product.

Dr. Prowse and Nortek also assert that based on a comparable license, Dr. Prowse is entitled to use the air handling system as a damages base. A comparable license is not enough to justify the use of the entire market value rule where "there was no evidence that the patented feature was the basis of consumer demand." *Digital Reg. of Texas v. Adobe Sys, Inc.*, Case No. 12-cv-1971-CW, 2014 WL 4090550, at *3 (N.D. Cal. Aug. 19, 2014) (citing *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1319-20 (Fed. Cir. 2011). As a result, Dr. Prowse does not have the foundation to

9

opine that the patented features drove customer demand.

In its brief, Nortek proffers two other reasons, neither of which was discussed by Dr. Prowse in his expert report, as to why apportionment is not required. First, Nortek argues that the claims of the patent are directed toward the air handling system as a whole. However, this argument overstates the scope of the claims and the nature of Nortek's infringement theory. An air-handling system is made of up of several different components and Nortek is not accusing every component of the system of infringing its patents. Moreover, the claims do not cover the entire system. For example, claim 16 of the '442 patent only covers the fan array fan section of the air handling system. Thus, Nortek cannot rely on the value of the non-infringing components in determining an appropriate royalty base.

Second, Nortek argues the air-handling unit is the smallest saleable unit. In *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1327-28 (Fed. Cir. 2014), the Federal Circuit clarified the application of the smallest saleable unit approach to damages:

> In other words, the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment. Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature (as VirnetX claims it was here), the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology. To hold otherwise would permit the entire market value exception to swallow the rule of apportionment.

Here, the accused air handling systems are made up of several components,[2] including components that are not accused of infringement. In light of *VirnetX* and the fact the air handling system is a multi-component product containing non-infringing features, Dr. Prowse needed to do more than just stop his analysis at the level of the smallest saleable unit and instead, needed to apportion the value between the patented and unpatented features. The entire market value rule is

---

[2] In the Revised Joint Claim Construction Statement, the parties agreed that the term "air[-]handling system" should be construed as "a structure that includes components designed to work together in order to condition air as part of the primary system for ventilation of buildings or rooms." ECF 97 at 2. The Court adopted this construction in the order construing claims. Order 2, ECF 117.

a narrow exception and the Federal Circuit's "strict requirements limiting the entire market value exception ensure that a reasonable royalty 'does not overreach and encompass components not covered by the patent.'" *VirnetX*, 767 F.3d at 1326 (quoting *LaserDynamics*, 694 F.3d at 70). Nortek has not supported its use of the entire market value rule in this case, and therefore, the Court GRANTS Energy Labs' motion to exclude Dr. Prowse's opinions on a reasonable royalty. In light of this ruling, the Court does not reach the other issues raised by Energy Labs' motion.

### C. Energy Labs' Motion *in Limine* No. 3 to Preclude Argument and Evidence of Alleged Copying.  DENIED.

Energy Labs moves, pursuant to Fed. R. Evid. 402, 403, and 702, to preclude Nortek from presenting evidence or argument regarding alleged copying. MIL No. 3 at 1, ECF 228. According to Energy Labs, Nortek does not have sufficient evidence to support a claim of copying, Nortek's evidence is not relevant to any issue, there is a significant risk that the jury will improperly consider Nortek's evidence, and finally Dr. Karvelis' conclusory statements about copying lack proper foundation or reliable methodology. *Id*. Nortek argues that Energy Labs seeks to prevent it from presenting any evidence related to copying but the motion focuses only on copying opinions offered by Dr. Karvelis. Opp. No. 3 at 1, ECF 254-4. Nortek claims that its copying evidence consists of more than Dr. Karvelis' opinions and argues that Energy Labs' motion is an improper attempt to attack the sufficiency of Nortek's evidence. *Id*.

The Court agrees with Nortek and finds that Energy Labs' motion raises issues regarding the sufficiency of evidence which are more appropriate as the subject of cross-examination rather than as the target of a motion *in limine*. The Court notes that if there are objections that an expert is testifying beyond the scope of his or her report, the proffering party must be prepared to immediately show the Court where in the expert report the testimony is located. If that expert's testimony is not found in his or her expert report, that evidence will not be allowed at trial.

### D. Energy Labs' Motion *in Limine* No. 4 to Exclude from Trial Opinions and Evidence Not Included in Nortek's Expert Reports.

Energy Labs moves to preclude Nortek from presenting opinions and evidence not disclosed in Nortek's expert reports, unless Dr. Karvelis is offered for deposition. MIL No. 4 at 1, ECF 229. Energy Labs argues that Dr. Karvelis submitted a declaration in connection with

summary judgment that contained opinions and evidence not contained in his expert reports.[3]  *Id*. Nortek responds that Dr. Karvelis' declaration did not cover subjects not within the scope of his expert reports but rather reiterated, reasonably elaborated, or clarified his existing opinions.  Opp. No. 4 at 1, ECF 254-6.

After reviewing Dr. Karvelis' declaration, the Court agrees with Nortek and finds Dr. Karvelis did not present new opinions.  The Court acknowledges the line between a reasonable elaboration and a new opinion can sometimes be murky but in this case, it appears Dr. Karvelis simply elaborated upon and clarified his existing opinions.  Accordingly, the Court DENIES Energy Labs' motion *in limine* no. 4.

**IT IS SO ORDERED.**

Dated: July 15, 2016

_____
BETH LABSON FREEMAN
United States District Judge

---

[3] Energy Labs also moves to exclude Dr. Karvelis' opinions on doctrine of equivalents.  However, as set forth in the joint pretrial statement, Nortek is not asserting infringement under the doctrine of equivalents.  Accordingly, the Court denies as MOOT Energy Labs' motion with respect to excluding arguments relating to the doctrine of equivalents.

12